UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

# MEMORANDUM

| | |
|---|---|
| Case No. | CV 14-4999 DSF (SHx) |
| Title | Claire Gerard, et al. v. John Paul Mitchell Systems, et al. |
| Date | 8/22/16 |

Present: The Honorable    DALE S. FISCHER, United States District Judge

| Debra Plato | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs | Attorneys Present for Defendants |
| Not Present | Not Present |

**Proceedings:**   (In Chambers) Order GRANTING Motion for Summary Judgment by Defendants PMNV Las Vegas LLC, PMCA Bakersfiled LLC, PMHBW LLC, and P2W Learning Systems, LLC  (Dkt. 118)

Defendants PMNV Las Vegas LLC, PMCA Bakersfield LLC, PMHBW LLC, and P2W Learning Systems, LLC move for summary judgment of claims brought by five former cosmetology students.[1]  The students allege that Defendants violated federal, California, and Nevada wage laws by failing to pay them for work performed in Defendants' clinic classrooms – salon-style spaces where haircuts and other services were done for paying customers.  Plaintiffs Claire Gerard, Melody Northrop, Berenisa Cortes Palominos, Dylan Thomas, and Frances Handcock brought their case as a putative class action, but the parties stipulated to have the threshold question of whether Plaintiffs were employees heard prior to any class certification motion.  See Second Joint Stipulation (Dkt. 107).  Defendants' motion is granted.

---

[1] Defendants John Paul Mitchell Systems; P.M. Advanced Education, Inc.; Paul Mitchell Advanced Education, LLC; Von Curtis, Inc.; D'Ann Evans; Ann-Marie Safadi; Winn Claybaugh; John Paul DeJoria; and Paul Mantea joined in the motion.  See Dkt. 119.  PMNV Las Vegas, PMCA Bakersfield LLC, PMHBW LLC, and P2W Learning Systems LLC are owned in part by Claybaugh and JPMS Holdings, Inc.  Statement of Undisputed Fact 126.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## MEMORANDUM

### I. LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "This burden is not a light one." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010). But the moving party need not disprove the opposing party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Rather, if the moving party satisfies this burden, the party opposing the motion must set forth specific facts, through affidavits or admissible discovery materials, showing that there exists a genuine issue for trial. Id. at 323-24; Fed. R. Civ. P. 56(c)(1).

The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). An issue of fact is a genuine issue if it reasonably can be resolved in favor of either party. Id. at 250-51. "[M]ere disagreement or the bald assertion that a genuine issue of material fact exists" does not preclude summary judgment. Harper v. Wallingford, 877 F.2d 728, 731 (9th Cir. 1989). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury . . . could find by a preponderance of the evidence that the [non-movant] is entitled to a verdict . . . ." Anderson, 477 U.S. at 252. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248.

"A district court's ruling on a motion for summary judgment may only be based on admissible evidence." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 385 (9th Cir. 2010). A party seeking to admit evidence bears the burden of proof to show its admissibility. Id. But courts need not scour the record to determine if evidence is admissible. Id. at 385-86.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## MEMORANDUM

## II.    UNDISPUTED FACTS

Defendants are for-profit cosmetology schools in California and Nevada that were licensed by state cosmetology boards, which oversee cosmetology schools and enforce regulations for cosmetology training. Statement of Undisputed Facts (SUF) 1-10.[2]

The schools have large signs outside that read, "Paul Mitchell The School." SUF 66. Defendants were eligible to disburse federal financial aid, and Plaintiffs were offered or received federal grants or loans to fund their education. SUF 3, 26. Plaintiffs knew the financial aid was dependent on their enrollment in an academic program. SUF 26-28. Gerard and Northrup attended the Sherman Oaks School. SUF 15-16. Palominos attended the East Bay School. SUF 14. Handcock attended the Fresno School. SUF 13. Thomas attended the Las Vegas School. SUF 17. Each signed enrollment contracts with Defendants and agreed to comply with the student catalogue and professional development guidelines. SUF 21-22. They were required to purchase student kits, which included tools, textbooks, and mannequin heads, and they were subject to additional fees if they failed to complete classes within a prescribed period. SUF 177-178.

The schools' curriculum included hairstyling, haircutting, health and safety considerations, disinfection and sanitation, and client communications. SUF 11, 29.[3] The East Bay, Fresno, and Sherman Oaks schools provided 1,600 hours of training, as required by California law. SUF 18. The Las Vegas School provided 1,800 hours of training, as required by Nevada at the time. SUF 19. The hours were tracked with an electronic system that recorded Plaintiffs' attendance and verified that they completed the hours needed for their state licenses. SUF 20.

The schools' curriculum was divided into four phases, starting with traditional classroom instruction and progressing through services on mannequins before beginning work on live guests. SUF 37-52. During the phases in which Plaintiffs performed services on live guests, they spent half of their weekdays in more traditional classrooms and half in clinic classrooms. SUF 53, 57. Saturdays were spent in the clinic classrooms only. SUF 61. Clinic classrooms were set up similar to a salon. Plaintiffs conformed to

---

[2] Facts 1 through 124 are Defendants' facts. Plaintiffs filed additional facts numbered 125 through 266. For ease of reference, all are referred to as "SUF." Unless otherwise noted, the facts cited by the Court are undisputed, or the Court found the dispute was not a legitimate dispute, was irrelevant, or lacked merit.

[3] Plaintiffs argue that the curriculum also included other components that were not required by law, but they do not dispute that these topics, which were required by state regulations, were included in the curriculum. See Pl.'s Resp. (Dkt. 143-1) to SUF 11.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

Paul Mitchell's dress code and performed haircuts, coloring, and other services for fee-paying guests. SUF 34, 60, 237. The fees charged by the schools were comparable to discount salons. See Mandelbaum Decl., Ex. A (Dkt. 134-3) at 159.[4] Signs in the lobbies notified guests that unlicensed students performed all services under the direction of an instructor, and guests signed waivers indicating they understood services were performed by students. SUF 67, 69. Plaintiffs wore name tags identifying themselves as "Future Professionals" when they worked on live guests. SUF 68.

When guests arrived, Plaintiffs practiced a consultation and formulated a plan for service. SUF 73. Before starting any service, Plaintiffs were required to obtain an instructor's signature, signifying the instructor discussed and approved of their plan. SUF 74, 76. Plaintiffs sometimes had to wait for an instructor to become available to coach them, and two Plaintiffs testified that they sometimes had difficulty finding instructors in the clinic classrooms. SUF 79; Vogelzang Decl., Ex. A (Dkt. 126-1) at 95-96, 116; Ex. C (Dkt. 126-5) at 175, 179-180. But clinic classrooms were staffed by paid instructors. SUF 38.

Plaintiffs had to practice various types of cosmetology services in order to graduate. SUF 110. They were required to attempt any service requested and could be disciplined for refusing, but they were not disciplined for doing a poor job or taking too long, even if a guest was unhappy. SUF 82, 180, 183.

Plaintiffs allege that their work in the clinic classrooms was unpaid labor rather than cosmetology training, chiefly because some tasks did not require specialized training. For example, even though the front desk was staffed by a paid employee, a student was also assigned to assist with greeting visitors and facilitating check-in. SUF 70, 94. Plaintiffs also did other "concierge station" tasks, which are characterized differently by the parties but involved dispensing salon products, laundering towels, and wiping down equipment. See Pl.'s Resp. (Dkt. 143-1) to SUF 94; SUF 100, 200-207. The schools had paid janitorial workers. SUF 106, 107. But Plaintiffs received time

---

[4] Defendants object to the use of documents created by franchisor Paul Mitchell Advanced Education, LLC (PMAE), including "Guide 5" documents. They argue the documents were prepared by a "third party" and that Plaintiffs offered no testimony indicating Defendants relied on or acted in conformance with the documents. Id. But PMAE is a co-defendant that joined in the summary judgment motion, and Defendants, as franchisees, were obligated to follow PMAE's "system." See Mandelbaum Decl., Ex. R (Dkt. 135-3) at 7; Ex. S (Dkt. 135-4) at 7. Moreover, Defendants indicated in their motion to seal that the documents were created "for use in the operation of their cosmetology schools." Defs.' App. to Seal (Dkt. 138) at 2:26-3:1. Defendants' objection is overruled. The Court reviewed the parties' other objections, but they are not material to the outcome and are overruled.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## MEMORANDUM

credit toward graduation for any time spent sweeping, cleaning, or emptying the trash. SUF 109.[5] The amount of time that Plaintiffs estimated they spent on such tasks varied, but it was a small percentage of the 1,600- and 1,800-hours required for their state cosmetology licenses. Palominas estimated that she worked on concierge tasks for up to 24 half-day shifts.[6] See Palominas Depo. (Dkt. 126-2) at 171-72, 177, 178, 181, 183. Thomas estimated that he worked a concierge shift every one or two weeks for the first two or three months that he was at the school. Thomas Depo. at 134. Once he became a full-time student, he did only about three more shifts. Id. Gerard testified that she spent about five hours per week greeting and taking tickets from customers but only during the first phase of training. Gerard Depo. (Dkt. 126-9) at 287. Northrop testified that she worked in the dispensary about two half-days per month. Northrop Depo. (Dkt. 126-11) at 312-313.

Plaintiffs also received instruction and were encouraged to sell products to customers by following Paul Mitchell Advanced Education's "2-Minute Method." SUF 236. If Plaintiffs sold enough products (which included pet products), they could attend a three-day educational conference called Caper. SUF 156-159; see also SUF 231. But Plaintiffs were not disciplined for failing to sell products and could graduate without selling any. SUF 87-88.[7]

Defendants tracked Plaintiffs' services and product sales in the clinic classrooms. SUF 148. All hours spent at the schools, including those spent on concierge tasks, were counted toward state licensure requirements. SUF 31-32. But none of the Plaintiffs were formally employed by the schools or were guaranteed employment elsewhere. SUF 23. Plaintiffs did not expect wages, employee benefits, or job protections, though they did receive tips and could receive rewards for selling Paul Mitchell products. SUF 25, 265-266.

The fees generated from clinic classroom services and product sales added to Defendants' revenue totals, and the schools were profitable. See SUF 168-169; see also

---

[5] The parties disagree on the amount of time spent on such tasks but not on the fact that Plaintiffs could have performed such tasks in the clinic classrooms.

[6] She testified to four to ten half-days in the dispensary (where supplies were apportioned), two to five half-days in the washhouse, one or two half-days as a greeter, two to five half-days working in the color bar, and one or two half-days in inventory. Palominas Depo. (Dkt. 126-2) at 171-72, 177, 178, 181, 183.

[7] Thomas complained of being "talked down to" for not selling enough products but not of being penalized or reprimanded. See Chung Decl., Ex. L (Dkt. 142-5) at 216.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

Mandelbaum Decl., Ex. B (Dkt. 134-4).  But the bulk of revenue came from tuition and fees.  Id.

Plaintiffs received instruction on topics covered by the California and Nevada licensing exams and completed mock exams before they graduated.  SUF 63-65, 111-115.  Gerard, Northrup, Palominos, and Handcock took and passed the California licensing exam on their first tries.  SUF 121.  Thomas was eligible to take the Nevada licensing exam and passed the written portion, which was the only part that he elected to take.  SUF 117, 122.

### III.  DISCUSSION

Cosmetology training and licensing is regulated by state boards.  California and Nevada require cosmetology students to receive instruction on numerous topics and to complete a large number of instructional and practical hours before being licensed.  See, e.g., Cal. Code Regs. tit. 16, § 950.2; Nev. Admin. Code §§ 644.115, 644.200.  In California, cosmetology courses must consist of at least "1,600 hours of practical training and technical instruction in the practice of cosmetology" – the equivalent of about 10 months of full-time training.  Cal. Bus. & Prof. Code § 7362.5(b).  Some of the practical instruction hours can be performed on paying customers if the school is licensed by the cosmetology board and the student has received sufficient technical instruction.  Cal. Bus. & Prof. Code § 7319.5; Cal. Code Regs. tit. 16, § 950.12.  The required instruction in California includes about 200 hours of health and safety training, including disinfection and sanitation, and the board recommends that schools provide training on "salesmanship, decorum, record keeping, and client service records."  Cal. Code Regs. tit. 16, § 950.2.  Nevada similarly required 1,800 hours of instruction and practical experience[8] – the equivalent of more than 11 months of full-time training – and it permits students to practice cosmetology in connection with a school.  Nev. Rev. Stat. Ann. §§ 644.200 (amended October 1, 2015), 644.190.  Nevada's required coursework also includes instruction on infection control and prevention and "[m]anagement of a cosmetological establishment."  Nev. Admin. Code 644.115.

Defendants argue that Plaintiffs' time in clinic classrooms was designed to meet the requirements imposed by state licensing boards and that Plaintiffs were not transformed into employees under federal, California, or Nevada law by working in such classrooms.  Plaintiffs argue the clinic classrooms were profit drivers for the schools and that students were working without pay, "under the guise of education."

---

[8] The requirement has since been reduced to 1,600 hours.  See Nev. Rev. Stat. Ann. § 644.200.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## MEMORANDUM

### A. Fair Labor Standards Act

To "employ" someone under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, et seq., means to "suffer or permit to work." 29 U.S.C. § 203 (g). The definition is "exceedingly broad," Tony & Susan Alamo Found. v. Sec'y of Labor, 471 U.S. 290, 295, (1985), but it "was obviously not intended to stamp all persons as employees who, without any express or implied compensation agreement, might work for their own advantage on the premises of another." Walling v. Portland Terminal Co., 330 U.S. 148, 152 (1947). The existence of an employment relationship under the FLSA is generally tested by the "economic reality." Hale v. State of Ariz., 993 F.2d 1387, 1393 (9th Cir. 1993).

In Walling v. Portland Terminal, the Supreme Court held that some job trainees were excluded from FLSA coverage during the 7-8 day training period before becoming eligible for paid work. The Court found the FLSA did not apply because the trainees greatly benefitted from the training and the employer received no immediate advantage. Walling, 330 U.S. at 152-53. The Court reasoned that if the trainees had gotten the same instruction at a vocational school, "it could not reasonably be suggested that they were employees of the school within the meaning of the Act." Id. at 153. Congress did not intend to outlaw student or other relationships in which people work "without promise or expectation of compensation, but solely for his personal purpose or pleasure." Id. at 152.

Nevertheless, the Ninth Circuit and other courts have suggested that there may be some circumstances under which the FLSA definition is wide enough to encompass student trainees. See, e.g., Randolph v. Budget Rent-A-Car, 97 F.3d 319, 326 (9th Cir. 1996) (suggesting in dicta that students could be employees under circumstances not present in that case); Marshall v. Baptist Hosp., Inc., 668 F.2d 234, 236 (6th Cir. 1981) (agreeing with the lower court that displacing x-ray department employees with students violated the FLSA). The Ninth Circuit instructs district courts to "consider the totality of the circumstances of the relationship," see Hale, 993 F.2d at 1394, but it has not described the factors that might transform an intern or trainee into an employee under the FLSA.[9]

---

[9] In other contexts, the Ninth Circuit has instructed courts to consider "whether the alleged employer has the power to hire and fire the employees, supervises and controls employee work schedules or conditions of employment, determines the rate and method of payment, and maintains employment records." Hale, 993 F.2d at 1394. But in the vocational school context, the factors offer little guidance because all schools have the power to accept or deny student applicants, control schedules, and maintain records.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

Plaintiffs urge this Court to follow the guidance issued by the Department of Labor, which issued informal guidance in its Field Operations Handbook on whether students are employees. It indicated that students are not employees if all of the following criteria apply: "(1) The training, even though it includes actual operation of the facilities of the employer, is similar to that which would be given in a vocational school. (2) The training is for the benefit of the trainees or students. (3) The trainees or students do not displace regular employees, but work under their close observation. (4) The employer that provides the training derives no immediate advantages from the activities of the trainees or students, and on occasion operations may actually be impeded. (5) The trainees or students are not necessarily entitled to a job at the conclusion of the training period. (6) The employer and the trainees or students understand that the trainees or students are not entitled to wages for the time spent in training." DOL Field Operations Handbook (2/4/2016), Ch. 10, § 10b11 (b) (available at: https://www.dol.gov/Whd/FOH/index.htm).

The DOL, however, derived its criteria from Walling v. Portland Terminal, see Glatt v. Fox Searchlight Pictures, Inc., 811 F.3d 528, 536 (2d Cir. 2016), and as several circuits have noted, that agency has no special competence or role in interpreting judicial decisions. See id. (explaining that the DOL's interpretation is entitled to, at most, Skidmore deference to the extent the court finds it persuasive); Schumann v. Collier Anesthesia, P.A., 803 F.3d 1199, 1209 (11th Cir. 2015) (same); Solis v. Laurelbrook Sanitarium & Sch., Inc., 642 F.3d 518, 525 (6th Cir. 2011) (same). It provides insufficient flexibility and is inconsistent with a totality-of-the-circumstances approach required to determine FLSA violations. See id. at 525.

The circuits that have examined the employment status of student interns have instead focused on the primary beneficiary of the relationship. See Glatt, 811 F.3d at 536 ("[T]he proper question is whether the intern or the employer is the primary beneficiary …."); Schumann, 803 F.3d at 1211 (adopting primary beneficiary approach); Solis, 642 F.3d at 529 (same). The Second Circuit in Glatt explained that the primary beneficiary approach focuses on what the intern receives in exchange for his or her work. Glatt, 811 F.3d at 536 (citing Walling, 330 U.S. at 152). The analysis is flexible and acknowledges that intern relationships should be analyzed differently from employee relationships because the intern expects educational or vocational benefits that are not necessarily expected with employment. Id. The "mere fact" that a business benefits from offering internships "cannot, standing alone, render the student interns 'employees' for the purposes of the FLSA." Schumann, 803 F.3d at 1211 (noting that licensure laws provide evidence that society has decided clinical work is necessary and important).

The Court is persuaded that the primary beneficiary approach is the correct one here. It accounts for the "economic reality" of the relationship, see Hale, 993 F.2d at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

1393, and avoids inadvertently transforming relationships entered "solely for [the student intern's] personal purpose or pleasure" into employment relationships, see Walling, 330 U.S. at 153.

The touchstone of the primary beneficiary analysis is "economic reality." Glatt, 811 F.3d at 537. Courts can look at whether the intern expected compensation or was entitled to paid work after the internship. Id. at 536-537. They can also consider how closely the intern's work is tied to formal education, how similar the training is to an educational environment, whether the internship accommodates academic commitments, whether the duration corresponds with beneficial learning, and the extent to which intern work displaces paid employees. Id. In light of these considerations, there is no genuine issue of triable fact that Plaintiffs are students, not employees under the FLSA.

Plaintiffs did not expect wages, employee benefits, or job protections. SUF 25. They received tips and could get rewards for selling Paul Mitchell products, SUF 256-259, 265-266, but receiving incidental benefits is not the same as expecting compensation. Cf. Tony & Susan Alamo Found., 471 U.S. at 294 (finding free housing and other assistance could give rise to expectation of compensation). Plaintiffs were not hired by Defendants after graduation nor were they guaranteed employment elsewhere. SUF 23. They knew they were being offered federal financial aid and that the aid was dependent on their enrollment in an academic program, not a job. SUF 3, 26-28.

Plaintiffs were trained on topics covered by state licensing requirements and all of the hours they worked were counted toward the minimum needed for California and Nevada licenses. SUF 31-32. Plaintiffs argue that some tasks, like greeting customers and folding towels, did not teach them new skills, but any academic program might include material that some students already know. In any event, the concierge tasks amounted to a tiny percentage of the ten or eleven months needed to complete the programs. See, e.g., Palominas Depo. (Dkt. 126-2) at 171-72, 177, 178, 181, 183 (estimating up to 24 half-day shifts on concierge tasks); Thomas Depo. (Dkt. 126-13) at 134 (describing no more than 15 concierge shifts). In small amounts, such work does not relegate the educational function to secondary status. Benjamin v. B & H Educ., Inc., No. 13-CV-04993-VC, 2015 WL 6164891, at *3 (N.D. Cal. Oct. 16, 2015). Moreover, Plaintiffs provide no evidence that those tasks are not training under California and Nevada requirements for health and safety, salesmanship, decorum, record keeping, and salon management. See Cal. Bus. & Prof. Code § 7319.5; Cal. Code Regs. tit. 16, § 950.12; Nev. Admin. Code 644.115. That Defendants charged fees for services and ran profitable schools does not undermine the extent to which the clinic class work was tied to Plaintiffs' formal education.

The schedule for clinic classroom hours accommodated and complemented the formal instruction. See SUF 37-57. All hours were counted toward Plaintiffs'

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

graduation. SUF 31-32. There is no allegation that Plaintiffs were kept working in the clinic classrooms after their minimum number of licensure hours were completed. The clinic work made Plaintiffs eligible to take their respective state licensing exams, and they each passed the portions they attempted. See SUF 117, 121-122.

Plaintiffs suggest that their clinic work displaced other workers because Defendants offered salon services at prices comparable to discount salons. See Mandelbaum Decl., Ex. A (Dkt. 134-3) at 159. But Plaintiffs could not displace other salon workers. It is illegal to offer cosmetology services without a license unless the worker is a student. See Cal. Bus. & Prof. Code §§ 7317, 7349, 7395.1(a); Nev. Rev. Stat. Ann. § 644.190. The clinic classrooms exist solely for the students, and such vocational programs do not violate the FLSA. See Solis, 642 F.3d at 520 (finding no FLSA violation where sanitarium existed solely to train certified nursing assistants). Defendants had paid janitorial staff and front-desk personnel to clean and perform other non-cosmetology tasks. See SUF 70, 106, 107. Concierge tasks were sometimes performed by paid instructors. See SUF 75 (instructors sometimes greeted guests), 95, 217. Even assuming concierge tasks were not legitimately part of the required curriculum, Plaintiffs provide no evidence that the existing personnel could not complete the tasks or that other workers would have been required.

Plaintiffs were the primary beneficiaries of the classroom clinic time. Even if Defendants sometimes incidentally benefitted, Plaintiffs benefitted by completing the required hours for licensing, receiving the practical training required by California and Nevada regulators, and by becoming eligible for state licenses. Defendants' motion with respect to the FLSA is GRANTED.

### B. California

California's Industrial Welfare Commission (IWC) defines "employ" as "to engage, suffer, or permit to work." Cal. Code Regs. tit. 8, §11020(2)(D). Its wage order for the personal service industry includes "schools of beauty culture offering beauty care to the public for a fee." See Cal. Code Regs. tit. 8 § 11020(J). Plaintiffs apparently assume the order regulates not just instructors and other school employees but students also, and they argue Plaintiffs were eligible for minimum wage protection under the IWC order.

But it was decided long ago that the status of cosmetology students attending schools was defined by the Cosmetology Act, not the IWC. Hutchison v. Clark, 67 Cal. App. 2d 155, 160-61 (1944). The Cosmetology Board is "the only governmental agency that has any authority" to determine whether students should be paid for services performed while enrolled in a cosmetology program. Id. at 161. That schools market

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## MEMORANDUM

services of students to the public does not confer any IWC authority over the cosmetology schools. Id.

Plaintiffs argue that Hutchison was implicitly overruled by the California Supreme Court's decision in Martinez v. Combs, 49 Cal. 4th 35 (2010). But Martinez focused on contract farm labor, not student interns or cosmetology students. There the California Supreme Court held that the IWC generally has the power to define employment relationships, but it did not expressly overrule Hutchison or provide a basis for sweeping students – whom the Legislature has specifically committed to the Cosmetology Board – into the IWC's purview. See Martinez, 49 Cal. 4th at 52.

Advisory opinions from the Division of Labor Standards Enforcement (DLSE), which enforces IWC orders, and the Board of Barbering and Cosmetology are in accord. The DLSE cited Hutchison in explaining that the power to impose minimum wages presupposes an employment relationship. See DLSE Opinion Letter 2010.04.07 at 3 (available at http://www.dir.ca.gov/dlse/OpinionLetters-byDate.htm). In its enforcement manual, it explicitly excluded "[s]tudents who perform work in the course of their studies, as part of the curriculum … if they receive no remuneration or credit toward school fees." See DLSE Policies and Interpretations Manual (revised March 2006), § 43.6.8 (available at: http://www.dir.ca.gov/dlse/manual-instructions.htm). The Cosmetology Board went further, saying that "if a student earns a wage while in their approved school or working as a student-extern in a qualified establishment, they are in direct violation" of the law prohibiting practicing cosmetology without a license. See Circular Letter #14/10 (December 18, 2014), California Board of Barbering and Cosmetology (available at: http://www.barbercosmo.ca.gov/schools/circular_ltrs.shtml). While such opinions do not have the power to bind, the expertise that the agencies bring to the subject matter gives the opinions persuasive power. See Yamaha Corp. of Am. v. State Bd. of Equalization, 19 Cal. 4th 1, 11 (1998) (describing the value of agency opinions).

This Court, sitting in diversity, must follow relevant intermediate appellate decisions unless there is convincing evidence that the California Supreme Court would not follow them. Ryman v. Sears, Roebuck & Co., 505 F.3d 993, 994 (9th Cir. 2007). The Court is not convinced that the broad holding in Martinez abrogates Hutchison, which relied on the specific statutory authority given to the Cosmetology Board to regulate cosmetology students like Plaintiffs.

Defendants' motion for summary judgment on the California employment status of Gerard, Northup, Palominas, and Handcock is GRANTED.

### C. Nevada

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## MEMORANDUM

The parties disagree about whether Nevada statutes prohibit students from being paid for work in clinic classrooms, but they agree that Nevada has adopted the FLSA approach to minimum wages. The FLSA's "economic realities" test for employment applies. Terry v. Sapphire Gentlemen's Club, 336 P.3d 951, 958 (2014).

As explained above, Thomas was not an employee under the FLSA, and therefore, he is not an employee under Nevada law.

## IV. CONCLUSION

Plaintiffs were not employees within the meaning of the FLSA, or California or Nevada law. Defendants' motion for summary judgment is GRANTED.

IT IS SO ORDERED.